**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

KINGSLEY BROWN,

                                    Plaintiff,

          v.                                                         No. 09-CV-371
                                                                          (TJM/DRH)
BRIAN FISCHER, Commissioner, N.Y.S.
Dept. of Corrections,

                                    Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

KINGSLEY BROWN
Plaintiff Pro Se
08-R-2917
Mt. McGregor Correctional Facility
1000 Mt. McGregor Road
Wilton, New York 12831

HON. ANDREW M. CUOMO                    DAVID L. COCHRAN, ESQ.
Attorney General for the                       Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Kingsley Brown ("Brown"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that the DOCS Commissioner violated his constitutional rights under

the First Amendment.  Compl. (Dkt. No. 1).  Presently pending is defendant's motion for

_____

          [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 29.  Brown opposes the

motion.  Dkt. No. 32.  For the following reasons, it is recommended that defendant's motion

be granted.


## I. Background

The facts are presented in the light most favorable to Brown as the non-moving party.

See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).  All of the relevant events

occurred while Brown was incarcerated at the DOCS reception center in Ulster County.

Compl. ¶ 2.

On September 9, 2008, Brown arrived at a facility in Ulster County for initial processing

into DOCS.  Compl. ¶ 5; Brown Dep. (Dkt. No. 29-3) at 4.  Upon arrival, Brown was ordered

by two unidentified corrections officers to report to the barber to have his face shaven or be

subjected to disciplinary penalties.  Compl. ¶ 5; Brown Dep. at 5, 8-9.  Brown was then, and

remains, a practicing Rastafarian.  Compl. ¶ 8; Brown Dep. at 6-7; Brown Aff. (Dkt. No. 1 at

12); Rost Aff. (Dkt. No. 1 at 15-16) ¶¶ 4-5.  It was against Brown's religious beliefs to have

his hair shaved.  Compl. ¶ 8; Brown Dep. at 8-9; Dkt. No. 1 at 22-26.  Brown possessed a

court order exempting him from DOCS regulations regarding facial hair.  Brown Dep. at 9;

Dkt. No. 1 at 13-14.  Internal DOCS policies also provided exemptions from the facial hair

policies based on an inmate's religious convictions.  Compl. ¶ 9; Dkt. No. 1 at 28-31.

However, on the day in question, Brown did not have the court order in his immediate

possession.  Brown Dep. at 9-10.  A DOCS barber shaved Brown's beard and moustache

and Brown was placed in a housing unit until his transferred to his present facility.  Brown

Dep. at 10.

Brown was housed in Ulster County for approximately three weeks.  Brown Dep. at 12.

While incarcerated in Ulster, Brown made approximately four or five trips to the law library.

Brown Dep. at 17.  On his first visit, he explained what happened on September 9, 2008 to

a law librarian who advised him to file a complaint.  Brown Dep. at 13-14.  The next time

Brown reported to the library, he was further advised to file a grievance[2] and was told by the

librarian that the librarian would arrange for a grievance form to be delivered to Brown from

the corrections officers.  Brown Dep. at 13-15.  Brown never received a form.  Brown Dep.

at 15.  Brown estimates that, he visited the library on at least two other occasions prior to

being transferred.  Brown Dep. at 17.

After Brown was transferred, he filed a grievance concerning the events of September

9.  Brown Dep. at 15.  The grievance was dated October 21, 2008, and was ultimately

denied as untimely.  Compl. ¶ 7; Brown Dep. at 17-18; Dkt. No. 1 at 6, 20.  Brown did not

file the grievance earlier because he was new to the system, and did not request an

extension of time after the denial because he thought that it was a final decision.  Brown

Dep. at 17-18; Brown Mem. of Law (Dkt. No. 32) at 6-7.  Instead, Brown filed the instant

action.


## II.  Discussion

Brown contends that his First Amendment rights to religious freedom were violated

---

[2]"The IGP [Inmate Grievance Program] is a three-step process that requires an
inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2)
appeal to the superintendent within four working days of receiving the IGRC's written
response, and (3) appeal to the CORC [Central Office Review Committee] ... within four
working days of receipt of the superintendent's written response." Abney v. McGinnis, 380
F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

when the two unidentified corrections officers required him to shave his facial hair in contravention of his religious beliefs.  Defendant moves for summary judgment alleging that Brown failed to properly exhaust his administrative remedies and also failed to plead the personal involvement of Fischer.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant,

a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

## B. Failure to Exhaust

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 83 (2006).  This exhaustion requirement applies to all prison condition claims.  Porter, 534 U.S. at 532.  "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement."  Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate.  Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)).  Exhaustion for an inmate in DOCS custody is generally achieved through the IGP.  However, when inmates

5

fail to follow the IGP, a court must conduct a three-part inquiry to determine if such failure is

fatal to their claims.  A court must consider whether

> (1) administrative remedies are not available to the prisoner; (2)
> defendants have either waived the defense of failure to exhaust
> or acted in such a way as to estop them from raising the
> defense; or (3) special circumstances, such as a reasonable
> misunderstanding of the grievance procedures, justify the
> prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the

action complained of."  Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v.

Churner, 532 U.S. 731, 738 (2001)).  The test to determine the availability of an

administrative remedy is an objective one and asks whether "a similarly situated individual

of ordinary firmness" would have deemed it accessible.  Id. at 688.

In this case, liberally construing the facts in the light most favorable to Brown, he has

successfully demonstrated that his failure to follow the administrative process was

excusable.  While Brown was advised by the law library at Ulster that he needed to file a

grievance, no form was provided to him by the librarian or correctional staff for multiple

weeks.  Courts have held the repeated failure to provide inmates with grievance forms and

writing materials renders the grievance process unavailable to them.  See e.g. Sandin v.

Poole, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008) (citing cases).  Additionally, there is no

dispute that Brown was new to DOCS and was unaware what the appropriate policies and

procedures were when filing a grievance.  Other than the limited advice provided by the

librarian, the record does not establish that Brown received an inmate handbook or any

other guidance about DOCS administrative grievance program.  Construing the facts in the

6

light most favorable to Brown, he has raised a material fact as to whether a similarly situated person would have been unaware of the grievance process rendering it unavailable.

For these reasons, defendant's motion on this ground should be denied.


### C.  Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

The gravamen of Brown's complaint against defendant Fischer, the DOCS Commissioner, is that Fischer failed to exercise proper supervision of DOCS employees who violated Brown's rights.  However, a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement.  <u>Wright</u>, 21 F.3d at 501.  Additionally, to the extent the complaint is construed to argue personal involvement based upon Brown's denied grievance filed at Mt. McGregor, such claims are also meritless.  Brown does not allege, nor would the record support, any conclusion that Fischer was involved in the initial denial of Brown's grievance or had any notice of its filing.  See <u>Bodie v. Morgenthau</u>, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's complaint); <u>Johnson v. Wright</u>, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose <u>respondeat</u> <u>superior</u> liability.") (citations omitted).

Brown also states that he never met or corresponded with Fischer.  Accordingly, Fischer cannot be found personally liable based on the fact that Brown filed one grievance which was dismissed after its initial review.  Moreover, the complaint fails to allege, and Brown offers no evidence, that Fischer failed to train any of the defendants or that he was grossly negligent.  Additionally, Brown fails to allege or prove that there was a continuing pattern of constitutional violations to which he was subjected.  See <u>Harnett v. Barr</u>, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally

8

responsible for failing to 'remedy' a violation.").

Accordingly, defendant's motion should be granted on this ground.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion for summary judgment (Dkt. No. 29) be **GRANTED** and that judgment be entered in favor of Fischer on all claims.


Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  December 8, 2010
        Albany, New York

United States Magistrate Judge